***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and defendants' brief. Plaintiff failed to submit a brief. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Employee is Hubert Ray Parker.
2. Employer is West Durham Lumber Company.
3. The carrier on the risk at the time of the alleged injury by accident on April 24, 1997 was Zenith Insurance.
4. Defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed between the employer and the employee on April 24, 1997.
5. On April 24, 1997, plaintiff's compensation rate was $195.00.
6. The North Carolina Industrial Commission has jurisdiction of this matter.
7. The parties stipulated into evidence Exhibit 1, plaintiff's medical records from Orange Family Medical, North Carolina Spine Center and Durham County General Hospital.
8. The parties stipulated into evidence Exhibit 2, plaintiff's medical records from UNC Memorial Hospital.
9. The Commission takes judicial notice of the March 28, 2001 order of Deputy Commissioner Taylor.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing in this matter, plaintiff was a 30 year old male, born January 9, 1970 who had gone to school through the eleventh grade and left at sixteen years old to go to work. Plaintiff had experience working as a framer in construction for eight or nine years and security work for one year.
2. Plaintiff became employed with defendant-employer, West Durham Lumber Company, as a yard laborer. Kelly Henry hired plaintiff and instructed plaintiff to tell him if he was hurt as well as directed plaintiff with regard to his working hours, job duties, leave, and supervised plaintiff's work.
3. On April 24, 1997, a truck containing boxes of roof flashing had been unloaded. Mr. Henry was driving the forklift and there was a box of flashing in his way. Mr. Henry instructed plaintiff to move the box. Plaintiff picked up the box and started to sling it to the side. As plaintiff moved, his back popped and he felt a sharp pain.
4. Mr. Henry heard plaintiff's back pop, and plaintiff immediately told Mr. Henry that he was going to get his back checked because he had injured it. Mr. Henry approved plaintiff's visit to the doctor and indicated that plaintiff should bring any doctors' notes to him.
5. Mr. Henry was no longer employed at defendant-employer at the time of the Deputy Commissioner hearing and was not present to testify. Mr. Henry did not report plaintiff's injury by accident to the defendant employer. However, the Deputy Commissioner found plaintiff's testimony credible. The Full Commission declines to overturn the Deputy Commissioner's credibility determination and finds to be credible plaintiff's evidence that Mr. Henry witnessed the accident and authorized medical treatment.
6. On April 25, 1997, plaintiff's wife called defendant-employer to notify the company that plaintiff's back was hurting and that he would not be able to work. On Monday, April 28, 1997, plaintiff's wife again told defendant-employer that plaintiff's back would keep him out of work that day.
7. Plaintiff called his doctor on April 25, 1997 and was first seen by Dr. Axelbank on May 1, 1997. Plaintiff returned to Dr. Axelbank on May 5, 1997 continuing to complain of right-sided low back pain with an electric-type sensation that ran down from his right lower back to his hip and into his upper thigh.
8. On May 1, 1997, plaintiff was taken out of work for three days by Dr. Axelbank. On May 5, 1997, plaintiff was given a second work excuse. Both of plaintiff's out of work excuses from Orange Family Medical were given either by plaintiff or his wife to Mr. Henry, plaintiff's supervisor.
9. When plaintiff called to present his third out of work note to Mr. Henry, Mr. Henry indicated to plaintiff that plaintiff had been out of work too much, that defendant-employer did not need him anymore, and that he was terminated. Mr. Henry subsequently was terminated by defendant-employer for reasons unrelated to this claim.
10. Plaintiff continued to have severe back pain and presented to the UNC Memorial Hospital emergency room on May 22, 1997. Thereafter, plaintiff came under the care of Dr. Dahners who diagnosed plaintiff with low back pain, trochanteric bursitis and defect of the pars interarticularis at L4. After conservative treatment was unsuccessful, plaintiff was referred by Dr. Dahners to Dr. Joe Minchew, a board-certified orthopedic surgeon.
11. Dr. Minchew saw plaintiff on September 4, 1998, and discussed the incident at work and plaintiff's continuing back pain. Dr. Minchew diagnosed plaintiff with back pain and spondylolysis at L4. Eventually Dr. Minchew recommended a lumbar spine fusion and referred plaintiff to Dr. Stephen Grubb, an orthopedic surgeon.
12. Dr. Minchew was of the opinion that plaintiff probably had an underlying disc problem but that the incident of April 24, 1997 exacerbated plaintiff's underlying pathology and resulted in plaintiff's symptoms.
13. On September 7, 1999, plaintiff saw Dr. Grubb with situational depression and a history of a recent suicide attempt as well as back pain. Plaintiff was diagnosed with lumbar degenerative disc disease and spondylolysis, bilateral at L4-5. Plaintiff also had a major tear in the outer portion of the disc at L4-5 level.
14. On January 10, 2000, plaintiff underwent a L4-5 decompression, stabilization and fusion performed by Dr. Grubb.
15. Dr. Grubb was of the opinion that plaintiff's pars defect was preexisting and asymptomatic prior to his injury at work on April 24, 1997. The disc tear that led to disc degeneration occurred at the time of plaintiff's April 24, 1997 injury. The injury by accident also exacerbated the pars defect.
16. From April 25, 1997 and continuing, plaintiff was unable to perform the physical activities required by his job or any other job available to him.
17. At the time of Dr. Grubb's deposition on January 19, 2001, plaintiff had not yet reached maximum medical improvement and was not able to return to work as of that date. Dr. Grubb was, however, of the opinion that plaintiff would most likely be able to return to work at some point but would probably retain a permanency rating.
18. On April 24, 1997, plaintiff sustained a compensable injury by accident as a result of a specific traumatic incident of the work assigned resulting in an injury to his back.
19. As a direct and proximate result of his compensable injury by accident, plaintiff was incapable of earning the same wages which he earned before his injury in the same or any other employment from April 25, 1997 and continuing.
20. All medical care provided by Orange Family Medical Center, UNC Memorial Hospital, the North Carolina Spine Center and Durham County General Hospital was reasonably necessary to effect a cure, provide relief and lessen plaintiff's period of disability.
21. Plaintiff appealed the award by the Deputy Commissioner of a 20% attorney's fee, arguing that the fee contract between plaintiff and his attorney provided for a 25% fee. In her order of March 28, 2001, Deputy Commissioner Taylor denied plaintiff's motion to reconsider the attorney's fee based upon plaintiff's counsel's failure to take depositions in a timely manner and his failure to request extensions of time to take depositions, resulting in a delay in the closing of the record. In addition, plaintiff's counsel failed to file a brief in the appeal before the Commission and was not allowed to argue, pursuant to Worker's Compensation Rule 701. Therefore, an attorney's fee of 25% is found to be unreasonable under these circumstances.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On April 24, 1997, plaintiff sustained a compensable injury by accident as a result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. As the result of the compensable injury by accident, plaintiff was disabled and is entitled to temporary total disability compensation at the rate of $195.00 per week from April 25, 1997 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendants pay for medical treatment incurred or to be incurred as reasonably necessary to effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. §97-25.
4. There is a substantial risk that plaintiff will need future medical treatment for his compensable injury. N.C. Gen. Stat. § 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For plaintiff's temporary total disability, defendants shall pay plaintiff compensation at the rate of $195.00 per week from April 25, 1997 and continuing until further order of the Commission. Portions of this amount have accrued and shall be paid in a lump sum. This Award is subject to a reasonable attorney's fee approved in Paragraph 2.
2. A reasonable attorney's fee of 20% of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
3. Defendants shall pay all past and future medical treatment for plaintiff's compensable back injury as long as the same is reasonably designed to effect a cure, provide relief or lessen the period of disability.
4. Defendants shall pay the costs, including expert witness fees, which are hereby approved, as follows: a fee of $550.00 to Dr. Minchew and a fee of $525.00 to Dr. Grubb, to the extent these amounts have not already been paid.
This the ___ day of October 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
WBT/kjd